MACON KNITTING CO. et al. v. LEICESTER & CONTINENTAL MILLS CO.

(Circuit Court, E. D. Pennsylvania. February 7, 1902.)

No. 16.

1. CONTRACTS—CONSTRUCTION—DEFENSES TO ACTION FOR BREACH.

Plaintiffs, who were owners of certain patents relating to knitting machines, entered into a contract with defendant corporation, which was a manufacturer of knitted goods, by which defendant was given an exclusive license to use the patented machines for certain purposes during the life of the patents, and to make machines for its use, plaintiffs to receive in payment stock and bonds of defendant. Plaintiffs were also to make and sell to defendant a certain number of the machines. The contract contained a clause providing that, in the event of any suit or suits by or against either of the parties involving the patents or inventions, "the costs and expenses attending such suit or suits on behalf of any or all of the parties hereto shall be borne and paid equally by the respective parties." A suit was brought against defendant, on the ground that the machines infringed another patent, and plaintiffs, by leave of court, intervened and defended the same. *Held*, that neither the fact that the machines were held in such suit to be infringements, nor that the intervention was made without consultation with defendant, which had employed counsel to represent it in the suit, relieved it from its obligation under the contract to pay one-half the costs and expenses incurred by plaintiffs in defending the suit.

2. SAME.

Defendant could not plead, as a defense to an action to recover its share of such costs and expenses, that the machines furnished by plaintiffs were not in accordance with the contract, where another suit was pending between the parties in which such matter was in issue and could be fully determined.

At Law. Rule for judgment for want of a sufficient affidavit of defense.

Hector T. Fenton, for plaintiffs.
Joseph De F. Junkin, for defendant.

J. B. McPHERSON, District Judge. This suit is brought upon a written contract, entered into on February 10, 1896, by the parties plaintiff and defendant hereto, of which the following is a copy:

"This agreement, made and entered into this tenth day of February, A. D. 1896, by and between Joseph Bennor, of the city of Macon, in the county of

Bibb and state of Georgia, and the Macon Knitting Company, a corporation organized under the laws of the said state, and having its principal place of business in Macon aforesaid, parties of the first part, and the Leicester Mills Company, a corporation organized under the laws of the state of New Jersey, and having its principal place of business in Philadelphia, in the state of Pennsylvania, party of the second part, witnesseth: Whereas, letters patent of the United States No. 534,248, dated February 19, 1895, for an improvement in stockings and the art of manufacturing same, were granted to the said Joseph Bennor; and whereas, certain applications for letters patent of the United States were filed by the said Joseph Bennor for certain improvements in straight knitting machines for manufacturing fashioned hosiery, as follows: Serial No. 515,911, filed June 28, 1894, and allowed January 2, 1896; serial No. 517,970, filed July 19, 1894, and allowed January 2, 1896; and serial No. 566,416, filed October 21, 1895, and allowed November 18, 1895; and whereas, by an instrument of writing dated September 14, 1894, the said Macon Knitting Company did acquire from the said Joseph Bennor an undivided one-half part of the whole right, title, and interest in and to, all and singular, the said inventions and letters patent; and whereas, the party of the second part is desirous of manufacturing knitting machines containing said patented improvements in the United States, and of acquiring for the same territory the exclusive right to manufacture thereon knitted stockings of wool, worsted, and merino, but of no other material: under and in accordance with the said patent 534,248, together with other knitted goods of wool, worsted, and merino, but of no other material; and has agreed to pay the parties of the first part thereof, as hereinafter provided: now, therefore, the parties hereto, for and in consideration of the premises, and of the sum of one dollar each to the other in hand paid at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, do covenant and agree to and with each other as follows, and for themselves, their respective heirs, executors, administrators, and successors: First. The parties of the first part hereby license and empower the party of the second part to manufacture in the United States of America for its own use therein, to the end of the terms for which said letters patent are or may be granted, knitting machines containing the above-mentioned patented improvements, granting it the sole right in such United States to use the said machines in the manufacture of knitted goods of wool, worsted, and merino, but of no other material, and for no other purpose or purposes. Second. The parties of the first part further agree to build and furnish to the party of the second part twenty (20) knitting machines of the construction set out in application, serial No. 566,416, aforesaid, which machines shall be built by the parties of the first part at the earliest date possible, and shall be furnished by them to the party of the second part at a price of ten per cent. (10%) above their actual cost of construction; it having been understood and agreed that the machines shall not exceed in price the sum of two hundred dollars ($200) per machine; and that the party of the second part shall have the exclusive right to use the said twenty machines in the manufacture of knitted goods of wool, worsted, and merino, but of no other material, and for no other purpose or purposes. It is fully understood and agreed that the said machines shall be practically operative machines, and shall be built in a workmanlike manner, and that the parties of the first part shall furnish a capable man to instruct a competent person designated by the party of the second part, to operate the said machines, and shall furnish all proper and necessary information for the practical disposition and erection of said machines in the mills in Germantown, Philadelphia, of the party of the second part, cost of freight and placing ready to run to be paid by the party of the second part. Third. Upon the delivery and practical operation of the said twenty (20) machines, the party of the second part agrees to forthwith assign and transfer to the parties of the first part fifty (50) shares of the capital stock of the Leicester Mills Company, par value one hundred dollars ($100) per share, together with bonds of the said company to the value of five thousand dollars ($5,000), such bonds being secured by the mortgage now held in trust by the Provident Life and Trust Company of Philadelphia. Fourth. The party of the second part shall have

the privilege of constructing at its own expense, for the special use and purpose above recited, as many of the said machines embodying said patented improvements as it may desire to construct; and, in consideration of such privileges granted to it, the party of the second part agrees that on January 1, 1898, or prior to that time, if it shall have constructed eighty (80) of such machines, it will forthwith assign and transfer unto the parties of the first part one hundred (100) more shares of the capital stock of the said company of the said par value of one hundred ($100) per share, together with an additional amount of the said bonds thereof, to the value of five thousand dollars ($5,000). Fifth. It is further agreed between the parties hereto that, in the event of a suit or suits being brought by or against any or all of the parties hereto under or concerning the said letters patent and inventions, then and in that case the costs and expenses attending such suit or suits on behalf of any or all of the parties hereto shall be borne and paid equally by the respective parties; that is, one-half by the parties of the first part and one-half by the party of the second part. Sixth. It is mutually understood and agreed that Wilson H. Brown, of Philadelphia, Pennsylvania, vice president and treasurer of the said the Leicester Mills Company, personally guaranties to the parties of the first part, such guaranty being evidenced by his uniting in this agreement, that the aforesaid stock of the said company shall be valued at and be worth par, to wit, one hundred dollars ($100) per share, on the first day of January, 1898; and, further, that, if the parties of the first part so elect, he, the said Brown, will purchase from them at par on January 1, 1898, five thousand dollars ($5,000) of the said stock, and on January 1, 1899, five thousand dollars ($5,000) more of the said stock, and on October 1, 1899, the remaining five thousand dollars ($5,000) of the same."

In pursuance of this contract, some of the machines mentioned therein were furnished by the plaintiffs to the defendant, and other machines were built by the defendant itself, all being used for the manufacture of stockings. In 1898 the defendant was notified by John G. Powell and Edward Powell that these machines were infringing their patents, and not long afterwards a bill in equity to redress the infringement was filed by the Messrs. Powell in this court against the present defendant. Thereupon the present plaintiffs, having learned that the suit had been begun, filed the following petition for leave to intervene:

"The petition of the Macon Knitting Co., a corporation of the state of Georgia, and of Joseph Bennor, a citizen of the state of Pennsylvania, respectfully represent: (1) That on the 12th day of November, 1898, John G. Powell and Edward Powell brought their bill in equity in this court against the Leicester Mills Co., a corporation of the state of New Jersey, Wilson H. Brown, treasurer, and Everett H. Brown, secretary thereof, both residents of the city of Philadelphia, alleging in said bill that letters patent of the United States No. 510,934, dated December 19, 1893, for 'improvements in web-holding actuating mechanism for automatic knitting machines,' had been granted and issued to said complainants as assignees of said John G. Powell, the alleged inventor thereof; and charging therein that the defendants therein named had, after the grant and issue of said letters patent, made or caused to be made and used within the Eastern district of Pennsylvania web-holding mechanisms for automatic knitting machines similar to and in alleged infringement of said recited letters patent and the alleged exclusive rights of the complainants thereunder; and alleging also 'that the said defendants, without the license of the orators, and against their will, and in violation of their rights, have jointly procured and caused to be made for them, the said defendants, by the Macon Knitting Co., and one Joseph Bennor of Macon, Georgia, a large number of said infringing machines, and have used and intend to continue to use the said machines, within the Eastern district of Pennsylvania.' And your petitioners further aver that a subpoena ad respondendum issued upon said bill of complaint against said defendants named, which has been duly served, as

your petitioners are informed and believe, and is made returnable to the first Monday of December next, to wit, December 5, 1898. (2) And your petitioners further show that prior to February 10, 1896, they were and still are the owners of several letters patent of the United States for improvements in knitting machines and in the art or process of manufacturing hosiery, inter alia letters patent of the United States No. 534,248, dated February 19, 1895, Nos. 557,638, 557,639, and 557,641, all dated April 7, 1896; that on said 10th day of February, 1896, your petitioners entered into a certain written contract of agreement and license with the Leicester Mills Co. and Wilson H. Brown, as the other parties thereto, wherein and whereby one of your petitioners, the Macon Knitting Co., agreed to make and deliver, and did during the summer and autumn of 1896, make and deliver unto the said Leicester Mills Co. twenty of said patented knitting machines, constructed and operating substantially as shown, described, and claimed in one or more of said four letters patent last above recited in this paragraph, belonging to your petitioners; and in and by said contract of license, dated February 10, 1896, the Leicester Mills Co. was authorized and licensed to use the same in its mills, and were authorized and licensed to build, for its own use, and it did subsequently build for its own use and used other like machines. (3) And your petitioners further aver that in and by said contract of license, dated February 10, 1896, the Leicester Mills Co. bound itself to pay to your petitioners, as consideration for said machines and license, certain large sums of money and other valuable securities, part of which has been delivered and paid, and part of which, to wit, the sum of fifteen thousand dollars in securities, or money to that amount, became due and payable by said defendants to your petitioners on the 1st day of January, 1898. That the said defendants defaulted in said last-mentioned delivery and payment, and your petitioners now have pending against said defendants a suit in the New Jersey chancery to enforce the defendants' compliance with said agreement and contract of license, which suit has been pending for over six months last past, is still pending, and is set for trial or hearing on the 12th day of December, 1898, next, at Trenton, in said state. (4) And your petitioners further aver that not a single one of said machines or any part thereof built for and delivered by your petitioners to said defendants, under said contract of license, or any like machines built thereafter by the defendants under said contract of license, contain any mechanism similar in whole or in part to the mechanism shown, described, and claimed in the plaintiffs' letters patent No. 510,934, on which this suit is founded, nor do said machines or any of them infringe any of plaintiffs' rights, under said letters patent or otherwise. (5) And your petitioners further aver that in and by said written agreement or license dated February 10, 1896, between your petitioners and the said defendants, it was expressly agreed, for the protection of both parties hereto, that in case any person or persons thereafter set up any claim, by suit or otherwise, that said machines to be built thereafter under said license, and which were licensed thereby, conflicted with or infringed any such rights, secured by patent or otherwise, that the same should be answered and defended at the joint expense of your petitioners and the said defendants; and your petitioners stood ready to defend against this bill of complaint in this cause and at their own proper expense, as provided and set forth in said contract of license. (6) And your petitioners further aver that they and the said defendants have a full and perfect defense to the bill of complaint in this cause, and that they have reason to fear and believe that the defendants intend to make default herein, or neglect to make defense, or by reason of negligently making less than the whole defense, and to plead such recovery against them in defense of your petitioners' claim against said defendants for the aforesaid unpaid balance of purchase money under said contract of license. (7) Your petitioners therefore pray leave to intervene in this suit, as parties defendant, and to appear and make defense, by way of answer or otherwise, both on behalf of themselves, for the causes aforesaid, and on behalf of the said defendants as their licensees under the several letters patent aforesaid."

Leave to intervene was granted by the circuit court, and thereafter the present plaintiffs defended the suit, which was so pro-

ceeded in before the circuit court and the circuit court of appeals that a decree was finally entered in favor of the complainants, thus establishing the fact that the machines referred to in the foregoing contract infringed the patents belonging to the Messrs. Powell. The suit now in hand is brought to recover half the costs and expenses incurred in that litigation, and there is no dispute concerning the correctness of the plaintiffs' bill, nor of the reasonableness of the charge therein made.   The right to recover is denied solely upon the grounds set forth in the following affidavit of defense:

"Wilson H. Brown, being duly sworn, says: I am the treasurer of the Leicester and Continental Mills Company, defendant above, and the said corporation has a just, true, and complete defense to the whole of the plaintiffs' claim, as set forth in the statement of claim filed in the said case, of the following nature: On behalf of the defendant, I deny that it is indebted to the plaintiffs in any sum whatever arising out of the cause of action therein set forth. It is true that on or about February 10, 1896, the parties plaintiff and defendant herein did enter into the contract or agreement therein mentioned, copy of which is attached to the statement of claim, and which contains the clause fifth, quoted in the statement of claim, as follows: 'Fifth. It is further agreed between the parties hereto that, in the event of a suit or suits being brought by or against all of the parties hereto, under and concerning the said letters patent and inventions, then and in that case the costs and expenses attending such suit or suits on behalf of any or all of the parties hereto shall be borne and paid equally by the respective parties; that is, one-half by the parties of the first part and one-half by the party of the second part.' Defendant admits that during the years 1896 and 1897 some of the machines mentioned in the agreement were delivered to them and some were built by them, but they deny that they were able to operate any of the same under the terms of the agreement; that they discovered shortly after they began to use them that they were not 'practical operative machines, or built in a workmanlike manner,' as required by the agreement. In addition thereto, during the early part of the year 1898, they were notified by John G. Powell and Edward Powell that such machines were infringements upon letters patent of the same parties, and that they must cease operating the same and account to them to any use of the same already had, as well as damages. A careful investigation of the claims of Messrs. Powell was made by the officers of the defendant company, and it was found to be the case by them, and they were so advised by competent authority, that the machines which the plaintiffs had delivered to them were clearly infringements of the patents of the said Messrs. Powell, and that their use of the same had been in contravention of the rights of the said Messrs. Powell, and so they informed the plaintiffs. As alleged in the statement of claim, on or about November 12 the said John G. Powell and Edward Powell filed a bill in equity against this present defendant, to No. 20 of October session, 1898, in the circuit court of the United States in and for the Eastern district of Pennsylvania, alleging their ownership of the letters patent above referred to, and that the machines which were in the defendant's possession were in infringement of their rights, and praying for an injunction and damages. Defendant denies, as alleged in the statement of claim, that the plaintiffs in this present suit, 'on being notified by the defendant of the institution of said suit in equity, obtained leave to intervene, and did intervene, therein, and defend the same,' but they allege, on the contrary, that the record of the said suit in the circuit court of the United States shows that upon November 30, 1898, the present plaintiffs filed a petition for leave to intervene, and without any consultation whatever with the defendant corporation, or its officers, a copy of which petition is hereto attached and made part hereof, marked Exhibit 'A', and that upon the same day they inclosed a copy of the same in a letter to counsel for defendant corporation, a copy of which is also hereto attached marked Exhibit 'B.' It will be observed, by reading such petition, that the present plaintiffs therein

averred the filing of the said bill against the defendant corporation, and allege, in paragraph two of the petition, that they are the owners of certain letters patent, which are the ones specified in the said agreement between the parties hereto, of February 10, 1896, and they set up such agreement and the delivery of the machines to the defendant corporation; aver the payment of part of the consideration and the litigation concerning the balance of it; in paragraph four deny that any of such machines contain any mechanism which in any way infringes upon the mechanism of the said Messrs. Powell, and in paragraph five they aver: 'And your petitioners further aver that, in and by said written agreement or license dated February 10, 1896, between your petitioners and the said defendants, it was expressly agreed, for the protection of both parties hereto, that in case any person or persons thereafter set up any claim, by suit or otherwise, that said machines to be built thereafter under said license, and which were licensed thereby, conflicted with or infringed any such rights, secured by patent or otherwise, that the same should be answered and defended at the joint expense of your petitioners and the said defendants; and your petitioners stand ready to defend against the bill of complaint in this cause, and at their own proper expense, as provided and set forth in said contract of license. (6) And your petitioners further aver that they and the said defendants have a full and perfect defense to the bill of complaint in this cause, and that they have reason to fear and believe that the defendants intend to make default herein, or neglect to make sufficient and perfect defense herein; whereby judgment or decree may go against them by reason of such neglect to make defense, or by reason of negligently making less than the whole defense, and to plead such recovery against them in defense of your petitioners' claim against such defendants for the aforesaid unpaid balance of purchase money under said contract of license. (7) Your petitioners therefore pray leave to intervene in this suit, as parties defendant, and to appear and make defense by way of answer or otherwise both on behalf of themselves for the causes aforesaid and on behalf of the said defendants as their licensees under the several letters patent aforesaid.' Not having been aware of the fact that the plaintiffs had so intervened in the said cause of their own volition, on December 2nd the defendant notified the plaintiffs of the beginning of the said action of the Messrs. Powell, and offered them permission to intervene if they desired. It is further averred, on behalf of defendant, that it had no connection with the employment of counsel for the plaintiffs in this suit, but, previous to the filing of such petition for the intervention by the plaintiffs, did employ and retain Joseph De F. Junkin, Esq., and John G. Johnson, Esq., members of the bar of this city, in good standing, to appear and represent it in the matter, and the appearance of such counsel was duly filed of record when this petition for intervention was filed by the plaintiffs. The defendant company in no way agreed to be responsible for the plaintiffs' costs, or to pay any of the costs of such intervention, and it is advised, and so avers, that such costs and expenses as are claimed by the plaintiffs here were not within the contemplation of clause five of the agreement heretofore quoted, and upon which the plaintiffs relied. The suit by the Messrs. Powell was brought against the present defendant, and it employed competent counsel to represent it, whose appearance had been entered of record. Suit had not been brought against the present plaintiffs; they, of their own volition, intervened in the said cause, alleging, as a reason therefor, that they did so for their own protection as to some certain other cause, alleging, as quoted above, that they stood ready 'to defend against the bill of complaint in this cause and at their own proper expense.' The defendant is advised and avers that under such circumstances it is not liable for all or any of the costs and expenses incurred and alleged to have been paid by the plaintiffs, as set forth in their statement of claim. The petition for intervention was duly granted by the court, and on the return day thereof, December 5, 1898, the plaintiffs in the present cause were granted permission to intervene, without any answer being filed or opposition being made by any of the parties to the said suit. This cause was so proceeded with by the parties plaintiff and the said inter-

113 F.—54

vening defendant that it was fully heard and the bill of the plaintiffs has been fully sustained, and the court has finally found that their patents were valid, and that the machines sold by the plaintiffs herein to the defendant were infringements upon the patents of Messrs. Powell. The defendant is advised and avers that, under such circumstances, the entire consideration for the agreement of tenth of February, 1896, between the parties hereto, has failed, and that it cannot be held legally liable for any costs incurred by the plaintiffs herein in defense of its patents."

The defense that the machines were not operative machines, or built in a workmanlike manner, is manifestly insufficient. Another suit is pending between the parties with reference to these machines, in which this defense is set up and can be fully considered; but, in any event, even if the defense were relevant here, the averment is too vague and indefinite to prevent judgment.

The remainder of the affidavit of defense is concerned with the suit brought by the Messrs. Powell, but I do not think it contains any answer to the fifth paragraph of the agreement, upon which the suit pending is brought, unless a sufficient answer is to be found in the averment that, when the present plaintiffs presented their petition to intervene, they stated to the court that they stood "ready to defend against the bill of complaint in this cause, and at their proper expense, as provided and set forth in said contract of license." The defendant therefore argues that, by reason of this statement in the petition to intervene, it in no way agreed to be responsible for the plaintiffs' costs in the bill in equity, or to pay any of the costs of such intervention, and that such costs and expenses as are now claimed by the plaintiffs are not within the contemplation of clause 5 of the foregoing agreement. I am unable to agree that this defense is well founded. It may perhaps be true that if, when the present plaintiffs intervened in the suit in equity they had expressly agreed to be bound for the whole of the costs and expenses of that litigation, they might be compelled to make good their proposition; but it is, I think, manifest that they offered to intervene under the contract, and not in opposition to its terms. There is no doubt that they wished to be in a position to control the defense. The reasons for thus wishing are stated in the petition to intervene, and were sufficient to induce the court to grant the request; but instead of offering unqualifiedly to carry on the suit at their own expense, they immediately and expressly modified the phrase by adding, "as provided and set forth in said contract of license." This can only refer to paragraph 5, and shows that the plaintiffs had no intention to bear the pecuniary burden alone, although they were ready, and indeed desirous, to assume the whole responsibility of conducting the defense.

Neither is there any equitable reason perceptible that should move the court to relieve the defendant from keeping its contract. The suit brought by the Messrs. Powell falls expressly within the language of paragraph 5. It is "a suit * * * brought * * * against (one) of the parties hereto * * * concerning the said letters patent and inventions;" and under such circumstances the agreement plainly declares that "the costs and expenses attending

such suit or suits  *  *  *  shall be borne and paid equally by the respective parties." It is manifest, I think, upon the face of the contract, that the present parties plaintiff and defendant were about to engage in a common enterprise, to which the patented inventions were believed to be important; and therefore, since both parties had a similar interest in the success of the enterprise, they provided that the validity of the inventions should be defended at their joint expense. It seems clear to me therefore that the present suit is well founded, and that the affidavit of defense fails to set forth a sufficient reason to prevent the entry of judgment.

The rule is made absolute.